EASTERN DIST.
*December*, 1840.

ELIZABETH
THOMAS, F. W. C.
*vs.*
GENERIS ET AL.

---

ELIZABETH THOMAS, F. W. C. *vs.* GENERIS ET AL.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

A slave taken to the state of Illinois, whose constitution forbids slavery and involuntary servitude, and resides there for a time, with the express or implied consent and knowledge of her master, in his family, she was under no obligation to serve him in that state, but became absolutely free, and being once free, could not be again made a slave by removing her to a slave state.

EASTERN DIST.
December, 1840.

ELIZABETH
THOMAS, F. W. C.
vs.
GENERIS ET AL.

This is an action by a woman of color to recover her freedom. The plaintiff alleges she was born free, in the state of Virginia, but that one O. C. Vanlandingham, by some means got possession of her when but a child, conveyed her to Kentucky, and held her in slavery until about November, 1833, when he carried her to Shawneetown, in the state of Illinois, where she resided, with the consent of the said Vanlandingham, until about the 1st February, 1837, when he conveyed her to the parish of Jefferson, in Louisiana, and soon after sold her as a slave to the defendant L. F. Generis, who persists in keeping her in a state of slavery. She further shows, that by the constitution and laws of the state of Illinois, she became emancipated and free while residing there, even if she was a slave when she removed there. That she is entitled to her freedom, and has a right to be set free; wherefore, she prays that she be permitted to sue for her freedom *in forma pauperis;* that she be taken into the possession of the sheriff until the final decision of this suit; and that she have judgment emancipating her from bondage, and declaring her a free woman, and as such, to exercise the rights of a free woman of color.

The defendant pleaded a general denial, and averred that he purchased the plaintiff as a slave for life, from one O. C. Vanlandingham, with full guaranty against all defects of title, or vices of body, &c., for a valuable consideration; and that should he be evicted, the said Vanlandingham, is bound and liable in warranty to restore him one thousand dollars as the price which he paid, together with all costs and expenses, &c. He prays that Vanlandingham be cited in warranty to defend this suit; and that in case he is evicted, that he have judgment over against his warrantor for the price he gave him, with interest and all costs.

Vanlandingham appeared by counsel, and pleaded a general denial to the plaintiff's petition, and denied specially any liability in warranty.

Upon these pleadings and issues, the case was tried.

The evidence showed among other things, that in 1832, the plaintiff left Kentucky with the consent of her master's

overseer, and went to Shawneetown, in Illinois, where Van- <span>Eastern Dist.</span>
landingham, her master, had a store, and where his family <span>December, 1840.</span>
resided. She came, it is said, first under the pretext of re- <span>ELIZABETH</span>
ceiving medical aid from an eminent physician residing there, <span>THOMAS, F. W. C.</span>
but lived in her master's family until 1837, a period of five <span>vs.</span>
<span>GENERIS ET AL.</span>
years, when he brought her to Louisiana, and soon after sold
her to the defendant, with warranty and guaranty. The
constitution and laws of Illinois prohibit slavery.

The district judge decided, that by the constitution and
laws of Illinois, the plaintiff became *ipso facto* free, residing
there with the consent of those who held her in slavery, and
being once free could not be made a slave.

There was judgment declaring the plaintiff a free woman,
and decreeing the warrantor to return the price, &c. The
defendant and warrantor both appealed.

*Wills*, for the plaintiff, urged the affirmance of the judg-
ment.

*T. Slidell*, for defendant, relied for reversal of judgment on
the cases of *Frank, f. m. c.* vs. *Powell*, 11 *Louisiana Reports*,
502 ; *U. States* vs. *Ship Garonne*, 10 *Peters' Reports*.

*M'Kinney*, for the warrantor, insisted that it was clearly
shown Vanlandingham bought and owned the plaintiff as a
slave, and could not be deprived of her as his property, with-
out his consent. That she went to Illinois without her
owner's consent, so that her residence there could not avail
her in obtaining her freedom. Although Vanlandingham
had an establishment in Illinois, he was but seldom there,
and never resided in that state.

2. The owner of the plaintiff lived in Kentucky until he
came to Louisiana, and the plaintiff, at her own request, was
allowed by the overseer of Vanlandingham, to go to Shaw-
neetown, to consult with Dr. Posey, about her health. It
was purely out of humanity she was permitted to go there.
There is no evidence of the intention of her owner that she ,
should go and reside in Shawneetown, which is necessary to

EASTERN DIST.
December, 1840.
───────
ELIZABETH
THOMAS, F. W. C.
vs.
GENERIS ET AL.

give her freedom. See the cases of *Berard* vs. *Berard*, 9 *Louisiana Reports*, 158; *Lewis, f. m. c.* vs. *Cabarrus et al.* 7 *Idem.*, 172; 2 *Martin, N. S.*, 409.

*Simon, J.*, delivered the opinion of the court.

Plaintiff, who is a mulatto woman, and whom the defendant purchased as a slave, from one Vanlandingham, sues for her freedom. She alleges that she was born free ; that by some means or other, Vanlandingham got possession of her when she was a child and conveyed her to Kentucky, where he held her in slavery until November, 1833, when she was carried to Shawneetown, in the State of Illinois, where she permanently resided, with the consent of her former master, until February, 1837 ; that she was taken to the parish of Jefferson, in this state, and sold by Vanlandingham to the defendant. She further states, that according to the laws of the state of Illinois, she was emancipated by her residence therein, even had she been a slave when she first entered the state. She prays for judgment, declaring her to be free. Defendant pleads that plaintiff is a slave for life, that he bought her for such from Vanlandingham, denies all the allegations contained in her petition, calls his vendor in warranty, and prays that he be dismissed, with costs, and for judgment against his warrantor, as the case may turn out. The district court gave judgment in favor of the plaintiff, decreeing her to be free, and also gave judgment in favor of the defendant against his warrantor, for the price of the slave. From this judgment, the defendant and his warrantor both appealed.

The evidence shows that the warrantor purchased the plaintiff as a slave, in the State of Virginia, in or about 1814; that he brought her to his farm in Kentucky, where she remained as a slave, until about the year 1832 or 1833 ; that plaintiff being then sick, wished and requested to be transported to Shawneetown, in the State of Illinois, to be there put under the care of an eminent physician, by whom she expected to be cured ; that during the warrantor's absence, she was taken over to Shawneetown, within the knowledge and with the consent of his overseer ; and that she resided

EASTERN DIST.
*December*, 1840.

ELIZABETH
THOMAS, F. W. C.
*vs.*
GENERIS ET AL.

in Illinois until the year 1837, when she was brought down to Louisiana, and sold to the defendant by the warrantor. It is also in evidence, that the warrantor had a house and store in Shawneetown, that his family resided there for some time, that plaintiff lived at her master's house in that place, and that the warrantor was there himself at various times. A respectable witness also swears that Vanlandingham told him that plaintiff went to Illinois, with his (warrantor's) knowledge and consent. The constitution of the state of Illinois was produced in evidence, and by the article 6, section 1, it is declared that "slavery or involuntary servitude shall not be thereafter (after 1819) introduced into that state," and by the second section of the same article, it is declared that "no person bound to labor in any other state shall be bound to labor in Illinois." Judge Scates, who was examined and gave his opinion as a lawyer on the above articles of the constitution of Illinois, says, that " in his opinion, a residence by a slave from another state, in Illinois, with the consent of the owner and slave, would never operate an emancipation of the slave, but if it were against the will and consent of the slave, she would become free *immediately*." He further gives it as his opinion that the consent or non-consent of the owner is immaterial ; if the slave be held in *involuntary* servitude in Illinois, she becomes immediately free by the constitution ; but that cannot be involuntary to which *she consents*, by the said constitution. He further says that there has never been any decision of the Supreme Court of said state upon the first and last cases stated in his answer, but that upon the other case of involuntary servitude, there are several decisions in favor of liberty, although they were restrained under indentures of service, which were held to be defective under the constitution.

The facts and circumstances of the case are such that, although it has been shown that the warrantor was absent from his plantation when the plaintiff went to Illinois, we cannot help coming to the conclusion that he must have been fully apprized of her living in his house and with his family in Shawneetown ; from this, we feel no hesitation in inferring

EASTERN DIST. that he consented to her residing there, as she cannot have
December, 1840. done so for the space of four or five years without his know-
ledge. It is, therefore, perfectly clear to us, that under the
constitution of the state of Illinois, if the plaintiff resided in
said state with the express or implied consent and with the
knowledge and tacit authorization of her former master, she
was under no obligation to serve him there; and, whatever
reluctance we may feel in depriving a man of his right to
property which he once lawfully owned, we concur in opi-
nion with our learned brother of the District Court, that "the
bond of slavery once dissolved, cannot be renewed by a sub-
sequent removal of a slave so circumstanced into a slave
holding state." In the case of *Lunsford* vs. *Coquillon*, 2
*Martin, N. S.,* 401, this court held that the voluntary
removal of a slave into the state of Ohio, by her then owner,
submitted the latter to the operation of the constitution and
laws of said state; as in this case, according to the consti-
tution of the state of Illinois, slavery could not exist in the
warrantor's house, where the plaintiff constantly resided, she
became thereby effectually emancipated. 8 *Idem*, 699. In
the case of *Louis* vs. *Cabarrus*, 7 *Louisiana Reports*, 172, this
court decided that "the residence of a slave in the state of
Ohio, contrary to the will or without the knowledge of his
owner does not deprive the latter of the right to his property."
It is clear that from this negative, pregnant with an affirma-
tive, the contrary proposition necessarily results when the
knowledge and consent of the master to the slave's residence,
in a state where slavery is forbidden, is satisfactorily estab-
lished. In the case of *Frank* vs. *Powell*, 11 *Idem*, 500, the
same doctrine was again sanctioned by this court, and it was
held that "the emancipation of a slave brought into the
state of Ohio, is the necessary legal consequence of his
removal thither, and his former owner must be presumed to
have consented to that emancipation." The last case that
came under the consideration of this court, in relation to the
right to the freedom of a slave, was that of *Smith* vs. *Smith*,
13 *Idem*, 444, in which, this court, in conformity with the
doctrine settled in the case of *Maria Louise* vs *Marot*, 9

ELIZABETH
THOMAS, F. W. C.
*vs.*
GENERIS ET AT.

A slave, taken
to the state of
Illinois, whose
constitution for-
bids slavery and
involuntary ser-
vitude, and re-
sides there for
a time, with the
express or im-
plied consent
and knowledge
of her master,
in his family,
she was under
no obligation to
serve him in that
state, but became
absolutely free;
and being once
free could not
be again made
a slave by re-
moving her to
a slave state.

*Idem.*, 474, held again that " the fact of a slave being taken to a country, where slavery or involuntary servitude is not tolerated, operates on the condition of the slave, and produces immediate emancipation." This question is now far from being new in our jurisprudence, and its solution by us, in this case, depending merely on the facts shown by the record, must be in accordance with that of the inferior court.

EASTERN DIST.
*December*, 1840.

ELIZABETH
THOMAS F. W. C.
*vs.*
GENERIS ET AL.

The opinion of judge Scates, who was examined as a witness, and which is relied on by the appellants, however respectable it may be, must yield to the principle so well recognized by our laws that a slave has no will, and cannot give any consent ; voluntary servitude, in the strict sense of the word, is unknown to us, and whenever an individual, who is not a slave, binds himself to labor for another, his consent becomes the subject of a civil obligation or contract. This court cannot regard any act, admission or consent of a person held in slavery, as operating to deprive him of a right to freedom. 4 *Martin*, 385.

We have not deemed it necessary to examine the bill of exceptions taken to the opinion of the lower court, permitting the introduction in evidence of a printed book, purporting to contain the constitution of the state of Illinois, as those parts of the said constitution, applicable to the present case, are substantially proven by the testimony of judge Scates, which comes up before us unobjected to.

It is, therefore, ordered adjudged and decreed, that the judgment of the District Court be affirmed, with costs.